UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| ACCIDENT INSURANCE COMPANY, INC. | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action: 1:20-cv-1190 |
| SMITH'S BELL AND CLOCK SERVICE INC. and HAMILTON COUNTY PARKS AND RECREATION | ) |
| | ) |
| Defendant. | ) |

**COMPLAINT FOR DECLARATORY JUDGMENT**

Plaintiff, Accident Insurance Company, Inc. ("AIC"), by counsel, for its Complaint for Declaratory Judgment against Defendants, Smith's Bell and Clock Service Inc. ("Smith") and Hamilton County Parks and Recreation ("Hamilton County"), states:

## I. INTRODUCTION AND THE PARTIES

1. This is an action for declaratory judgment, under 28 U.S.C. § 2201, to determine the rights and duties of AIC, Smith, and Hamilton County under an insurance policy, issued by AIC to Smith.

2. AIC is a citizen of New Mexico because it is a company incorporated under the laws of New Mexico with its principal place of business in New Mexico.

3. Smith is a citizen of Indiana because it is a company incorporated under the laws of Indiana with its principal place of business in Indiana.

4. Hamilton County is a citizen of Indiana because it is a political subdivision of Hamilton County, Indiana, a municipal corporation of Indiana, and it has its principal office in the City of Carmel, Hamilton County, Indiana.

## II. JURISDICTION

5. This Court has jurisdiction over this case under 28 U.S.C. § 1332(a)(1), because Plaintiff and Defendants are citizens of different states, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

## III. VENUE

6. Venue is proper in this Court under 28 U.S.C. § 1391(b)(2), because a substantial part of the events giving rise to the claim occurred in this judicial district and a substantial part of the property that is the subject of this claim was situated in this judicial district.

## IV. FACTUAL ALLEGATIONS

### A. Smith's Relationship with Hamilton County

7. Hamilton County owns a park known as Coxhall Gardens located in Carmel, Indiana (collectively, the "Park").

8. Within the Park are two clock and bell towers (the "Towers") that were believed to be installed by a company known as Verdin Clock and Bell Co. ("Verdin") in 2006.

9. Verdin provided maintenance to the towers until 2016.

10. When Verdin ceased providing maintenance, Hamilton County contacted Smith for it to provide maintenance and repair services of the towers.

11. Hamilton County alleges that between 2016 and 2018, Smith provided maintenance and repair services that were billed in excess of $20,000.

12. In December of 2018, Smith notified Hamilton County that it could no longer service the Towers because the Towers required structural and electrical repairs that were outside the scope of services provided by Smith.

### B. The Lawsuit against Smith

13. After Smith ceased servicing the Towers, Hamilton County is believed to have contacted Verdin to again provide maintenance services.

14. In the Spring of 2019, Verdin inspected the Towers and claimed that the Towers' original electric equipment had been removed or repaired with "lower quality or substandard equipment"; that an overhead latch door had been left open such that animals and weather had created a "biological and electrical hazard" for anyone attempting repairs; and that the estimated cost of repairs to the Towers was in excess of $100,000 (collectively, the "Loss").

15. On November 11, 2019, Hamilton County filed a lawsuit against Smith asserting the following Counts: I – Negligence; II – Fraud; III – Breach of Implied Contract (collectively, the "Lawsuit") and seeking damages in excess of $100,000, including a request for punitive damages. A copy of Hamilton County's Complaint is attached as Exhibit A.

16. In response to the Lawsuit, Smith submitted a claim to AIC (the "Claim").

**C. The AIC Policy**

17. AIC provided a commercial general liability ("CGL") insurance policy to Smith, policy number CPP 0018178 01 (the "Policy"), for the policy period of February 26, 2016 through February 26, 2017 (the "Policy Period"). The Policy is attached as Exhibit B.

18. The Policy provides, in relevant part:

> 1. Insuring Agreement
>
> a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. . . .
>
> b. This insurance applies to "bodily injury" or "property damage" only if:
>
> (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory."
>
> (2) The "bodily injury" or "property damage" occurs during the policy period; . . . .

(Policy, CG 00 01 04 13, p. 1 of 16).

19. The Policy defines "property damage" as follows:

> 17. "Property damage" means:
>
> a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
>
> b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.
>
> c. "Property damage" does not include any cost or expense to repair, replace or completely (sic) any work to any property that you (or any insured) are otherwise obligated to repair, replace or compete (sic) pursuant to the terms of any contract with any person.
>
> d. We may look to extrinsic evidence outside of the facts plead by any claimant to determine whether a lawsuit is seeking "property damage."

(Policy, p. 16 of 16; Endorsement AIC 3047 (05/10)).

20. The Policy contains the following exclusions:

> 2. Exclusions
>
> This insurance does not apply to:
>
> . . . .
>
> j. Damage to Property
>
> "Property damage" to: . . .
>
> (5) That particular part of real property on which you or any contractors of subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or
>
> (6) That particular part of any property that must be restored, repaired or replaced "you work" was incorrectly performed on it.
>
> . . . .

Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard."

. . . .

l. Damage to Your Work

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard."

This exclusion does not apply if the damaged work or the work out of which the damages arises was performed on your behalf by a subcontractor.

m. Damage to Impaired Property or Property Not Physically Injured

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

n. Recall of Products, Work or Impaired Property

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

(1) "Your product";

(2) "Your work"; or

(3) "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

(Policy, p. 5 of 16).

21. The Policy further defines "your work" as:

"Your work":

a. Means:

(1) Work or operations performed by you or on your behalf; and

(2) Materials, parts or equipment furnished in connection with such work or operation.

b. Includes:

(1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

(2) The providing of or failure to provide warnings or instructions.

(Policy, p. 16 of 16).

22. The Policy further defines "impaired property" as:

> "Impaired property" means tangible property other than "your product" or "your work", that cannot be used or is less useful because:
>
> a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or
>
> b. You have failed to fulfill the terms of a contract;
>
> if such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work" or your fulfilling the terms of the contract or agreement.

(Policy, pp. 13-14 of 16).

23. The Policy also contains an exclusion for "property damage" "which would not have occurred in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any 'fungi' or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or produce contributed concurrently or in any sequence to such injury or damage."

(Policy, Endorsement CG 21 67 12 04).

24. The policy also does not provide coverage for punitive or exemplary damages assessed against an insured. (Policy, Endorsement AIC 3019 (12/06)).

**D. AIC Reserves Its Right to Deny Coverage for Smith in the Lawsuit**

25. On February 4, 2020, AIC sent a Reservation of Rights letter (the "ROR") to Smith, which advised Smith that AIC would retain defense counsel to provide Smith a defense for the Lawsuit, but that AIC was expressly reserving its rights as to whether coverage was available to Smith under the Policy.

## V. DECLARATORY JUDGMENT

26. AIC repeats the allegations in paragraphs 1 through 25.

27. The Policy provides no liability coverage to Smith because the Claim or Lawsuit does not meet the definition of "property damage" under the Policy.

28. The Policy provides no liability coverage to Smith because the Claim or Lawsuit seeks to recover damages for losses or events that occurred outside the policy periods of the Policy.

29. The "Damage To Your Work" exclusion in the Policy excludes coverage to Smith for the costs to repair its allegedly faulty work.

30. The Policy provides no liability coverage to Smith because the "Impaired Property" exclusion in the Policy excludes coverage to Smith for the cost to repair or restore any deficiencies or defects to the Towers from Smith's work.

31. The Policy provides no liability coverage to Smith to address any "Fungi or Bacteria" damages resulting from fungal or bacterial growth from Smith's work upon the Towers.

32. The "Punitive or Exemplary Damage" exclusion in the Policy endorsements bars coverage for an award of punitive damages against Smith.

33. Because the Lawsuit is not covered under the Policy, AIC is not obligated to provide Smith with a defense in the Lawsuit or to indemnify Smith for any expenses, judgments, or costs that may be assessed in the Lawsuit.

## VI. PRAYER FOR RELIEF

WHEREFORE, AIC, by counsel, asks this Court to enter a declaratory judgment against Smith and Hamilton County, declaring that AIC does not owe liability coverage, including a defense or indemnity, to Smith for the Claim and Lawsuit presented by Hamilton County, for costs of this action and for all proper relief in the premises.

Respectfully submitted,

LEWIS WAGNER, LLP

By: /s/ *Jordan T. Crabtree*
Richard K. Shoultz, #15558-73
Jordan T. Crabtree, #35736-29
***Counsel for Plaintiff, Accident Insurance Company, Inc.***

LEWIS WAGNER, LLP
501 Indiana Avenue, Suite 200
Indianapolis, IN 46202-6150
Phone: (317) 237-0500
Fax: (317) 630-2790
rshoultz@lewiswagner.com
jcrabtree@lewiswagner.com